# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ASSOCIATION OF AMERICAN PHYSICIANS &
SURGEONS, INC., and ROBERT T. MCQUEENEY,

    Plaintiffs,

 v.               Case No. 13-C-1214

JOHN KOSKINEN,[1]
Commissioner of the Internal Revenue Service,
in his official capacity,

    Defendant.

## DECISION AND ORDER GRANTING [8] DEFENDANT'S MOTION TO DISMISS

  Plaintiffs Association of American Physicians & Surgeons, Inc. ("AAPS") and Robert T. McQueeney, M.D. ("Dr. McQueeney") filed this action against the Commissioner of the Internal Revenue Service for declaratory and injunctive relief to stop the alleged unconstitutional implementation of the Patient Protection and Affordable Care Act (the "ACA"), Pub. L. No. 111-148, 124 Stat. 119. AAPS is a membership organization of thousands of practicing physicians, many of whom have "cash practices" that do not accept payment from health insurance providers. Dr. McQueeney, a practicing psychiatrist, is a member of AAPS and maintains a part-time medical practice in Marinette County, Wisconsin.

  Defendant John Koskinen is the Acting Commissioner of the Internal Revenue Service ("IRS"), the executive agency entrusted to implement and administer particular sections of the ACA, including sections of the provisions commonly referred to as the Employer Mandate and

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Acting Commissioner of the Internal Revenue Service, John Koskinen, has been substituted as the defendant.

Individual Mandate. Plaintiffs allege that the IRS violated the constitutional doctrine of separation of powers and the Tenth Amendment by implementing the Individual Mandate in 2014 but not the Employer Mandate, contrary to Congress's intent that the mandates be implemented simultaneously. Plaintiffs seek declaratory and injunctive relief to prohibit the IRS from implementing and enforcing the ACA in its entirety or, in the alternative, from imposing the Individual Mandate without simultaneously enforcing the Employer Mandate. The IRS has moved to dismiss the action for lack of subject matter jurisdiction on the ground that Plaintiffs lack standing to sue. (ECF No. 8.) For the reasons stated below, the IRS's motion will be granted.

## I. BACKGROUND

The ACA imposes a mandate for individuals to purchase health insurance, 26 U.S.C. § 5000A ("Individual Mandate"), and a mandate for large employers to provide health insurance to their employees, *id.* § 4980H ("Employer Mandate"). The Individual Mandate provides that beginning in January 2014, a non-exempt individual must maintain a certain kind of health insurance (termed "minimum essential coverage") or else make a "shared responsibility payment," which the statute also refers to as a "penalty." *Id.* § 5000A(a)–(b) . An individual can obtain minimum essential coverage in several ways, including by receiving it through an employer, purchasing it through a health insurance Exchange or insurance agent, or enrolling in various government programs like Medicare and Medicaid. *Id.* § 5000A(f). The penalty for failing to comply with the Individual Mandate is calculated as a percentage of income, subject to a floor based on a specified dollar amount (e.g. $95 for 2014, $325 for 2015, and approximately $695 for 2016) and a ceiling based on the average annual premium the individual would have to pay for ACA-

2

compliant private health insurance. *Id.* § 5000A(c). The Individual Mandate was upheld by the U.S. Supreme Court as a valid exercise of Congress's taxing power. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, — U.S. —, 132 S. Ct. 2566, 2601 (2012) (hereinafter "*NFIB*").

The Employer Mandate provides that beginning in January 2014, employers with at least 50 employees must offer their full-time employees "minimum essential coverage" or else pay assessable penalties. 26 U.S.C. § 4980H. An employer who does not offer minimum essential coverage risks owing $2,000 per year for each full-time employee beyond the first 30 employees. *Id.* §§ 4980H(a), (c)(1), (c)(2)(D). The minimum essential coverage offered by employers must also be "affordable," and provide "minimum value," as defined in 26 U.S.C. § 36B(c)(2)(C). A plan is not "affordable" if the employee's required contribution exceeds 9.5% of her household income, *id.* § 36B(c)(2)(C)(i), and it does not provide "minimum value" if the employer's share of the costs of covered healthcare is less than 60%, *id.* § 36(c)(2)(C)(ii). An employer who offers a plan that fails to satisfy these two requirements risks owing $3,000 per year for each full-time employee, although the statute imposes a cap so that an employer's penalty for offering unaffordable plans does not exceed the penalty it would have incurred for failing to offer minimum essential coverage at all. *Id.* §§ 4980H(a), (c)(1), (c)(2)(D). The penalty will only be assessed if one or more employees receives a federal subsidy (a tax credit or cost-sharing reduction) for insurance bought on a health insurance Exchange. *Id.* §§ 4980H(a)(2), (b)(1)(B). Individuals are eligible for these subsidies if their income is within 400 percent of the federal poverty line and their employer does not offer adequate insurance. *Id.* §§ 36B, 4980H(c)(3).

Congress also established enforcement mechanisms to ensure compliance with the mandates. The penalties assessed under each mandate are payable to the IRS and are treated as tax obligations. *Id.* §§ 4980H(d), 5000A(g)(1). Large employers are also required to submit reports to the IRS about

3

the insurance they offer their employees. 26 U.S.C. § 6056. In addition, the ACA authorizes the Secretary of the Treasury, and through him, the IRS, to prescribe rules to implement and enforce the Employer Mandate. *Id.* §§ 4980H(d); 6056(a), (b)(1), (b)(2)(F), (d); 7805(a). Pursuant to this authority, following the ACA's passage in 2010, the IRS initiated the process of drafting regulations to implement the Employer Mandate and its accompanying reporting provisions. Following several rounds of notice and comment, in January 2013 the IRS published proposed rules to implement the Employer Mandate. *See* 78 Fed. Reg. 218 (Jan. 2, 2013). The final rules were issued February 12, 2014, after the case was filed. *See* 79 Fed. Reg. 8544 (Feb. 12, 2014) (to be codified at 26 C.F.R. pts. 1, 54, 301). Under the final rules, the IRS will not enforce the Employer Mandate in 2014; instead, the Employer Mandate will apply to employers with 100 or more full-time employees in 2015 and to employers with 50 or more full-time employees in 2016 and beyond.

Plaintiffs treat the Individual and Employer Mandates as an inextricable pair, and they contend that Congress required the Employer Mandate to begin at the same time as the Individual Mandate. According to Plaintiffs, "[the Employer Mandate protects] employees of large employers from having to pay substantial health insurance premiums in order to avoid the taxes imposed by the Individual Mandate." (Compl. ¶ 24, ECF No. 1.) In Plaintiffs' view, by delaying implementation of the Employer Mandate, the IRS changed legislation passed by Congress and thereby violated the doctrine of separation of powers and the Tenth Amendment.

Plaintiffs' complaint alleges that the IRS's actions will soon cause or have caused irreparable harm because members of AAPS, including Dr. McQueeney, have medical practices that depend on direct payment by patients for care, rather than on payments by insurance companies or other third-party payers. (*Id.* ¶ 26.) More than 50% of Dr. McQueeney's patients pay out-of-pocket for

4

his services. (*Id.* ¶ 12.) Plaintiffs contend that the IRS's implementation of the Individual Mandate without the Employer Mandate shifts the burden of paying health insurance premiums onto individuals and thereby eliminates from the market many cash-paying patients who seek and would seek medical care by members of AAPS, including Dr. McQueeney. (*Id.* ¶ 26.) In other words, because of the burdens imposed by the Individual Mandate, individuals will be forced to use their discretionary health care dollars on insurance premiums instead of direct payments to physicians, causing Plaintiffs to lose patients and revenue. (*Id.* ¶¶ 13-14.) Plaintiffs' complaint also contains a second claim: "Defendant's delay of the Employer Mandate has [] caused increases in individual health insurance premiums for some members of Plaintiff AAPS." (Compl. ¶ 17.)

## II. LEGAL STANDARD

As a preliminary matter, the parties propose different legal standards to guide the court's standing analysis at the pleading stage. Plaintiffs contend that "a litigant does not have to prove standing at the pleading stage." (Pls' Br. in Opp. at 15, ECF No. 10.) Plaintiffs cite *Clapper v. Amnesty Int'l USA*, — U.S. —, 133 S. Ct. 1138, 1146 (2013), which addressed a standing challenge at the summary judgment stage. Plaintiffs contend that they should be entitled to conduct discovery and gather data on the implementation of the ACA before the court requires them to demonstrate standing. (Pls' Br. in Opp. at 18, ECF No. 10.) The IRS rejects this view and argues that its motion is ripe for decision. The IRS contends that Plaintiffs' complaint is facially inadequate and that even if Plaintiffs' factual allegations are presumed to be true, Plaintiffs lack standing. (Def's Reply Br. at 8–10 , ECF No. 11; *cf. New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)). The IRS claims Plaintiffs' complaint contains only speculative predictions and argues that such complaints are routinely dismissed without any discovery. In the alternative, if the court

5

finds that Plaintiffs' complaint is facially adequate, the IRS argues that Plaintiff has failed to support its claim that standing exists with competent proof, as required by *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009).

Plaintiffs must at least allege facts sufficient to show standing at the pleading stage. As the IRS observes, "[t]he Supreme Court has characterized the doctrine of standing as 'an essential and unchanging part of the case-or-controversy requirement of Article III' of the Constitution." *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). A party seeking to invoke a federal court's jurisdiction carries the burden to demonstrate three elements: (1) "an 'injury in fact,' which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not before the court"; and (3) "a likelihood that the injury will be redressed by a favorable decision." *Perry*, 186 F.3d at 829 (internal citations omitted). Since these elements are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Id.* (quoting *Lujan*, 504 U.S. at 561). This includes the pleading stage.

There is, however, one significant difference between a plaintiff's burden at the pleading stage and his burden at the summary judgment stage: "in ruling on a motion to dismiss for lack of standing, the well-pleaded allegations of the complaint must be accepted as true." *Perry*, 186 F.3d at 829 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As a result, "general factual allegations

of injury resulting from the defendant's conduct may suffice" to establish standing at the pleading stage. *Alliant Energy Corp.*, 277 F.3d 916, 919 (7th Cir. 2002) (citing *Lujan*, 504 U.S. at 561). Nevertheless, the court must distinguish between allegations of fact, which are entitled to the presumption of truth, and unfounded speculation, which is not entitled to such a presumption. *See Allen v. Wright*, 468 U.S. 737, 758 (dismissing complaint that was "entirely speculative" at pleading stage); *Reid L. v. Illinois State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004) (same); *see also United Transp. Union v. I.C.C.*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("[W]e may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions—those types of allegations that are not normally susceptible of labelling as 'true' or 'false.'"). With these principles in mind, the court now examines whether Plaintiffs have standing to assert their claims.

### III. ANALYSIS

Article III's "case or controversy" requirement ensures that the federal judicial power is confined to a role consistent with a system of separated powers and limited to cases which are traditionally thought to be capable of resolution through the judicial process. *Flast v. Cohen,* 392 U.S. 83, 97 (1968). Consistent with this principle, "[w]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (internal citations omitted). The plaintiff's burden is heightened further when she seeks to challenge the government's decision to tax or not tax a third party. *See Allen*, 468 at 758–66 (holding that parents of black children in

7

school districts undergoing desegregation did not have standing to challenge IRS tax exemptions granted to racially segregated private schools); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, (1976) (holding that low-income individuals and organizations representing such individuals did not have standing to challenge IRS policy of extending favorable tax treatment to hospitals that offered only emergency room services to indigents); *Flight Attendants Against UAL Offset ("FAAUO") v. C.I.R.*, 165 F.3d 572, 574–75 (7th Cir. 1999) ("Ordinarily a person does not have standing to complain about someone else's receipt of a tax benefit.") (citation omitted). Plaintiffs typically lack standing to litigate the tax obligations of others because such suits are generalized grievances that "operate to disturb the whole revenue system of the government." *State of Louisiana v. McAdoo*, 234 U.S. 627, 632 (1914). Although exceptions exist in First Amendment challenges, the general rule that a party may not "litigate about strangers' taxes" is well-established. *See Zambrano v. Reinert*, 291 F.3d 964, 975 (7th Cir. 2002) (Easterbrook, J., concurring).

Plaintiffs argue that this case is not a third-party taxation case like *Allen* or *Simon*, even though it is brought solely against the IRS. Instead, Plaintiffs argue that they are "objecting to how the IRS shifted the ACA mandate burdens from large employers onto patients of Plaintiff McQueeney and of other physicians who belong to Plaintiff AAPS." (Pls' Br. in Opp. at 16, ECF No. 10.) In Plaintiffs' view, "[t]his lawsuit is not a challenge to tax policy, but to changes in a massive health care law." (*Id.* at 20.) Plaintiffs also note that although the Supreme Court upheld the Individual Mandate as a valid exercise of Congress's taxing power, it did not hold that the ACA's penalty provisions are a tax for all purposes, including for purposes of standing. (*Id.* at 10–11 (citing *NFIB*, 132 S. Ct. at 2584 (finding that penalty for failing to comply with Individual Mandate is not a tax for purposes of Anti-Injunction Act)).) Plaintiffs' argument misses the main

point of third-party standing cases. The critical issue is not whether the Employer Mandate is characterized as a tax, a penalty, or simply a mandate, but rather, whether the government action prescribed by the ACA directly affects (and injures) Plaintiffs. *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 615 (1989) (explaining that in *Allen* and *Simon*, the plaintiffs lacked standing "because the probable response of private individuals to explicit tax incentives was judged to be too uncertain to satisfy the redressability prong of federal standing requirements"); *Doe v. Obama*, 631 F.3d 157, 162 (4th Cir. 2011) ("*Allen* and *Simon* illustrate a fundamental tenet of standing doctrine: where a third party . . . makes the independent decision that causes an injury, that injury is not fairly traceable to the government.").

Plaintiffs' primary claim fails to establish standing because it relies on a series of discretionary acts by third parties. Plaintiffs allege that they will lose patients and revenue because (1) Defendant's decision to delay implementation of the Employer Mandate will cause large employers to not offer ACA-compliant health insurance for 2014 to their full-time employees, which (2) will cause these employees to pay out-of-pocket for insurance plans that Plaintiffs either will not or cannot accept payment from, which (3) will leave the employees with less discretionary income, which (4) will cause these employees to purchase fewer services from Dr. McQueeney and other AAPS members. As discussed below, each link of this lengthy causal chain is speculative and fails to support Plaintiffs' standing argument.

Employers have discretion in 2014, as in previous years, to offer health insurance to their employees. As the IRS notes, an employer's decision to offer health insurance to its employees is dependent on an array of factors, including the cost of insurance, employee preferences regarding compensation, and the actions of other employers in the same industry. (Def's Mem. in Supp. at

9

19, ECF No. 9.) It is of course possible that a substantial number of large employers will choose not to provide health insurance, but this is mere speculation. The ACA does not prohibit large employers from providing health insurance in 2014, and it is reasonable to conclude that many will still provide it in 2014 for the same reasons they provided it in the past.

In addition, even if some large employers choose not to offer health insurance in 2014, their full-time employees subject to the Individual Mandate will have the discretion to comply with the Mandate and purchase health insurance or pay the applicable penalty to the IRS. *NFIB*, 132 S. Ct. at 2597 (explaining that the Individual Mandate "merely imposes a tax citizens may lawfully choose to pay in lieu of buying health insurance"). Even if Plaintiffs are correct that Congress's intent in passing the Individual Mandate was to force healthy individuals who would otherwise go without insurance to purchase it, there is no guarantee that individuals will fulfill the wishes of Congress. The IRS may not enforce the Individual Mandate with criminal prosecution, *see* 26 U.S.C. § 5000A(g)(2), and as the Supreme Court observed in *NFIB*, "for most Americans, the [shared responsibility payment] will be far less than the price of insurance, and, by statute, it can never be more," 132 S. Ct. at 2595-96. The penalty amount is also subject to a phase-in period, and the penalties are lower in 2014 than in subsequent years. *See* 26 U.S.C. § 5000A(c)(2)(B), (3)(B). Indeed, for most healthy young people, they are significantly lower than the cost of complying with the mandate. As a result, it is not at all unreasonable to assume that many non-exempt individuals may simply choose to pay the penalty in 2014 instead of purchasing insurance. If that is the case, and considering the number of those previously insured whose individual policies were cancelled as a result of the more extensive coverage mandated by the ACA, it may be, as some have asserted, that Dr. McQueeney and AAPS's members will see an increase in patients at least in the first year.

10

Moreover, even if the employees purchase health insurance plans, it is speculative that those plans will not cover the services Plaintiffs provide. Plaintiffs allege that government-approved insurance plans under the ACA do not typically cover expenses for much of the medical care provided by AAPS members. (*Id.* ¶ 27.) But even if some plans do not cover Plaintiffs' services, individuals may still choose to pay for them out-of-pocket. Additionally, to the extent that Plaintiffs refuse to accept payment from insurance companies, they would be contributing to their own injury, which does not establish standing. *See Clapper*, 133 S. Ct. at 1152 ("[R]espondents' self-inflicted injuries are not fairly traceable to the Government's purported activities."). It is also speculative that employees who choose to forego health insurance and pay the applicable penalty will have less discretionary income than if they received health insurance from an employer and paid annual premiums. If the Employer Mandate forces employers to spend more on employee health care than in the past, employers might also reduce wages. Finally, even if employees have less discretionary income, it is speculative that they will decide not to purchase medical services from Dr. McQueeney and other members of AAPS. Plaintiffs insist that medical care is a "normal good," such that decreases in disposable income will cause individuals to spend less money on health care. (Pls' Br. in Opp. at 17, ECF No. 10.) But even if this is true, individuals may value Plaintiffs' services more highly than other services and continue to purchase them.

Under well-established standing doctrine, a threatened injury must be "certainly impending" to constitute an injury in fact. *See Clapper*, 133 S. Ct. at 1147. Each link of Plaintiffs' causal chain is tenuous, and in combination, the allegations fail to establish an injury that is "imminent" or "certainly impending." More importantly, to the extent Plaintiffs may suffer any future injury, they have not established that the injury would be fairly traceable to the IRS. The Seventh Circuit has

routinely found that such speculative claims do not satisfy the requirements of Article III standing. *See Shakman v. Dunne*, 829 F.2d 1387, 1397 (7th Cir. 1987) (finding the line of causation between the defendant's actions and the plaintiff's claim particularly attenuated because it depended upon "countless individual decisions" of third parties); *Credit Union Nat. Ass'n, Inc. v. Am. Inst. of Certified Pub. Accountants, Inc.*, 832 F.2d 104, 106–07 (7th Cir. 1987) ("There are so many links, each problematic, that it is impossible to trace concrete injury to the [defendant's actions].").

The reality is that almost every change in the tax laws will create incentives or disincentives that will have some impact on the income earned by some industry, trade or profession. If such an impact were by itself enough to confer standing, virtually every change in the tax code would be a potential subject of litigation by such groups. Such an expansion of the concept of standing is inconsistent with the structure of our government. *See Summers v. Earth Island Institute*, 555 U.S. 488, 492 (2009) ("In limiting the judicial power to "Cases" and "Controversies," Article III of the Constitution restricts it to the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law. Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action.").

Plaintiffs' claim that the IRS's actions have caused the insurance premiums of some AAPS members to increase suffers from similar deficiencies. First, the court notes that Plaintiffs' complaint did not identify a particular AAPS member whose premium has increased. An organization seeking to assert a claim on behalf of its members, when only some members have allegedly been harmed, must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Institute*, 555 U.S. 488, 498

(2009); *New Jersey Physicians, Inc.*, 653 F.3d at 241. Plaintiffs attempt to resolve this shortcoming by stating in their brief that "Lawrence Huntoon, M.D., Ph.D., a longtime member of AAPS, is personally facing an increase in his health insurance premiums due to Defendant's implementation of ACA." (Pls' Br. in Opp. at 22, ECF No. 10.) Plaintiffs contend that some of their members will suffer this injury because (1) the IRS's decision to delay implementation of the Employer Mandate will cause large employers to not offer ACA-compliant health insurance for 2014 to their full-time employees, which (2) will reduce the ability of the insurance companies to spread the risk among a multitude of policyholders, which (3) will cause insurance companies to charge higher premiums to insured policyholders like Dr. Huntoon. (Pls' Br. in Opp. at 22, ECF No. 10.) Like Plaintiffs' primary claim, this claim rests on the prediction that a significant number of large employers who previously offered insurance will cease offering it in 2014 because they are not compelled to do so. This claim also presumes that, contrary to Plaintiffs' primary claim, employees of these employers will not elect to purchase health insurance directly from insurance companies. It further presumes that insurance companies will respond by raising premiums. Again, these claims are speculative and rely on the decisions and actions of numerous third parties.

Even if Plaintiffs had properly identified Dr. Huntoon in their complaint, the link between Plaintiffs' alleged injury and the IRS's actions is far too attenuated to confer standing on Plaintiffs. Moreover, as with Plaintiffs' principal claim, the injury alleged is not the kind that confers standing. Tax policy inevitably causes prices of many goods and services to increase. An increase in the cost of goods and services that results from a change in the tax law is not the kind of harm that confers Article III standing on those who wish to challenge the government policy the tax reflects.

13

## IV. CONCLUSION

For the reasons stated above, Plaintiffs have failed to plead a claim which satisfies the standing requirements of Article III. Plaintiffs have presented only generalized grievances, and such grievances are not fit for judicial resolution. *See Allen*, 468 U.S. at 759–60. Since Plaintiffs' complaint is facially deficient, the court finds that discovery to further address the issue of standing is not warranted. The IRS's motion to dismiss (ECF No. 8) is hereby granted, and Plaintiff's claims are dismissed. Because the kind of harm alleged is not sufficient to confer Article III standing, even if realized, the dismissal is with prejudice.

**SO ORDERED** this ___18th___ day of March, 2014.

                                               s/ William C. Griesbach
                                               William C. Griesbach, Chief Judge
                                               United States District Court